# IN THE UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| CHRISTOPHER BELLAMY, DEMARCUS GRIFFIN, TJ SMITH, and TARGHEE LAMBSON, | )<br>)<br>)<br>) |
| Plaintiffs, | ) NO. 3:25-cv-00750 |
| v. | ) JUDGE CAMPBELL<br>) MAGISTRATE JUDGE HOLMES |
| NATIONAL COLLEGIATE ATHLETIC ASSOCIATION, | )<br>)<br>) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

Pending before the Court is a Motion for Temporary Restraining Order and Preliminary Injunction filed by four former student-athletes – Christopher Bellamy, Demarcus Griffin, TJ Smith, and Targhee Lambson. (Doc. No. 8). Plaintiffs seek to enjoin Defendant National Collegiate Athletic Association ("NCAA") from enforcing certain bylaws governing eligibility to preclude them from playing NCAA Division I college football during the 2025-26 season on grounds that enforcement of the eligibility rules violates Section 1 of the Sherman Antitrust Act. (*Id.*).

In support of the Motion, Plaintiffs submitted a verified complaint with exhibits (Doc. No. 1, Exs. 1-21) and memorandum (Doc. No. 9). Defendant NCAA filed a response in opposition to the motion (Doc. No. 25, Exs. 1-10), and Plaintiff filed a reply (Doc. No. 26). The parties each submitted additional exhibits in advance of the hearing. (Plaintiffs' Additional Exhibits, Doc. No. 31, Exs. A-L; Defendant's Additional Exhibits, Doc. No. 27, Exs. 1-2).

At the conclusion of the hearing on July 16, 2025, the Court took the motion under advisement. (*See* Hearing Transcript, Doc. No. 32). Following the hearing, the parties filed notices of supplemental authority of decisions by three federal District Courts and one Court of Appeals concerning the same or similar issues as those raised in this case. (Doc. Nos. 33, 36, 37).

While the motion for preliminary injunction was under advisement, Plaintiffs filed a second motion for temporary restraining order seeking permission to practice while the motion for preliminary injunction is pending. (Doc. No. 38).

For the reasons stated herein, Plaintiffs' motion for preliminary injunction will be **DENIED**. The instant order resolves the motion for preliminary injunction. Accordingly, the second motion for temporary restraining order will be **DENIED** as moot.

## I.     BACKGROUND[1]

Plaintiffs are former student-athlete football players who enrolled and played football at junior colleges before enrolling in NCAA Division I institutions. Under the NCAA Bylaws which, among other things, govern the eligibility of student-athletes, Plaintiffs are no longer eligible to compete.[2] At issue here are NCAA Bylaws that restrict the duration of a student-athlete's eligibility to compete to four seasons of competition within a five-year period. In relevant part, these Bylaws state:

> **12.8 Seasons of Competition: Five-Year Rule.** A student-athlete shall not engage in more than four seasons of intercollegiate competition in any one sport (see Bylaws 12.02.6 and 14.3.3). An institution shall not permit a student-athlete to represent it in intercollegiate competition unless the individual completes all seasons of participation in all sports within the time periods specified below:

---

[1]     A more extensive discussion of the NCAA, eligibility rules, student-athlete compensation is included in the Court's December 16, 2024, decision in *Diego Pavia v. NCAA*, 760 F. Supp. 3d 527, 544 (M.D. Tenn. 2024), which is currently on appeal.

[2]     The Division I 2024-25 Manual is Exhibit 6 to Plaintiff's Verified Complaint. (*See* Doc. No. 1-6).

2

Case 3:25-cv-00750    Document 39    Filed 08/07/25    Page 2 of 15 PageID #: 1624

> **12.8.1 Five-Year Rule.** A student-athlete shall complete the student-athlete's seasons of participation within five calendar years from the beginning of the semester or quarter in which the student-athlete first registered for a minimum full-time program of studies in a collegiate institution, with time spent in the armed services, on official religious missions or with recognized foreign aid services of the U.S. government being excepted. For international students, service in the armed forces or on an official religious mission of the student's home country is considered equivalent to such service in the United States.
>
>> **12.8.1.1 Determining the Start of the Five-Year Period.** For purposes of starting the count of time under the five-year rule, a student-athlete shall be considered registered at a collegiate institution (domestic or foreign; see Bylaw 14.02.4) when the student-athlete initially registers in a regular term (semester or quarter) of an academic year for a minimum full-time program of studies, as determined by the institution, and attends the student's first day of classes for that term (see Bylaw 12.8.2).

The NCAA Bylaws define "intercollegiate competition" as follows:

> **12.02.6 Intercollegiate Competition.** Intercollegiate competition is considered to have occurred when a student-athlete in either a two-year or a four-year collegiate institution does any of the following:
>
> (a) Represents the institution in any contest against outside competition, regardless of how the competition is classified (e.g., scrimmage, exhibition or joint practice session with another institution's team) or whether the student is enrolled in a minimum full-time program of studies;
>
> (b) Competes in the uniform of the institution, or, during the academic year, uses any apparel (excluding apparel no longer used by the institution) received from the institution that includes institutional identification; or
>
> (c) Competes and receives expenses (e.g., transportation, meals, housing, entry fees) from the institution for the competition.

Finally, a "Collegiate Institution" is defined as follows:

> **14.02.4 Collegiate Institution.** A collegiate institution (for purposes of NCAA legislation) is an institution of higher education that:
>
> (a) Is accredited at the college level by an agency or association recognized by the secretary of the Department of Education and

3

        legally authorized to offer at least a one-year program of study creditable toward a degree;

    (b) Conducts an intercollegiate athletics program, even though the institution is not accredited at the college level and authorized to offer at least a one-year program of study creditable toward a degree; or

    (c) Is located in a foreign country.

Taken together, these NCAA Bylaws allow a student-athlete to engage in intercollegiate athletic competition for four seasons within five consecutive calendar years. Effectively, there are two "clocks" on a student-athlete's eligibility: (1) the intercollegiate competition clock (hereinafter, "seasons of intercollegiate competition") allows four years of intercollegiate competition at a "collegiate institution"; and (2) the eligibility clock or "period of eligibility" allows student-athletes to compete within a five-year period which begins when the student-athlete begins full-time study at a "collegiate institution." Seasons of intercollegiate competition accrue when a student engages in competition at a collegiate institution. If a student does not compete during a season, that season does not "count" for purposes of the four-year intercollegiate competition clock. The period of eligibility, however, begins to run when a student-athlete begins full-time study at a collegiate institution whether or not they engage in intercollegiate competition, and continues to run, with limited exceptions, for five calendar years. A collegiate institution includes four-year colleges and two-year junior colleges. Junior Colleges are governed by the National Junior Collegiate Athletic Association ("NJCAA"), which, despite the similarity in name, has no affiliation with the NCAA.

The Plaintiffs here challenge the application of the Bylaws concerning seasons of competition and period of eligibility to their time spend at junior college. With the relatively recent

4

change in the NCAA Bylaws to allow student-athletes to earn compensation for their name, image, and likeness ("NIL"), eligibility to play Division I football has direct financial implications.[3]

In November 2024 the Court considered a virtually identical challenge to the NCAA eligibility bylaws brought by Diego Pavia, a football student-athlete at Vanderbilt University. Like Plaintiffs here, Pavia began his career as a student-athlete at junior college. Unlike Plaintiffs in this case, although Pavia had exhausted four years of intercollegiate competition, he had an additional year remaining on the five-year period of eligibility. Pavia argued that the NCAA Bylaws counting his time at junior college toward the four years of intercollegiate competition within five years was an undue restraint on trade in violation of the Sherman Act. This Court found Pavia was entitled to a preliminary injunction precluding the NCAA from "enforcing NCAA Bylaw 12.02.6 [the intercollegiate competition rule] *as to Pavia* – to allow him to play next season [2025-26] while th[e] case plays out." *Pavia*, 760 F. Supp. 3d at 544. The NCAA appealed the decision. The appeal remains pending. *See Pavia v. NCAA*, Case No. 24-6153 (6th Cir.).

Following this Court's grant of preliminary injunction, on December 23, 2024, the NCAA issued a blanket waiver to "permit student-athletes who attended and competed at a non-NCAA school for one or more years to remain eligible to compete in 2025-26 if those students would have otherwise used their final season of competition during the 2024-25 academic year, and meet all other eligibility requirements (e.g., progress toward degree, five-year period of eligibility)." (*See* Report of the NCAA Division I Board of Directors, Dec. 23, 2024, Doc. No. 25-9; NJCAA Press Release on NCAA Waiver, Dec. 23, 2024, Doc. No. 1-3). This blanket waiver which has been referred to as the "Pavia Waiver," provided relief from the four seasons of intercollegiate

---

[3] The projected NIL market for 2024-25 is $1.67 billion. (*See* Compl., Ex. 7, "NIL at 3: The Annual Opendose Report" at 3). Although NIL opportunities are available to all athletes, virtually all football-related NIL funds go to Division I football players. (*Id*. at 4).

competition portion of the Bylaws, but not the five-year eligibility clock. The blanket waiver does not apply to Plaintiffs who had no period of eligibility remaining.[4]

In the wake of this Court's decision in *Pavia* and the subsequent blanket waiver, many students who have exhausted their seasons and/or years of eligibility have brought suit seeking to enjoin the rules preventing them from competing with varying degrees of success. (*See* Def. Br., Doc. No. 25 at 3 (collecting cases)). Of note for purposes of the instant motion is the April 25, 2025 decision in *Elad v. NCAA*, Case No. 25-1981, 2025 WL 1202014 (D.N.J. Apr. 25, 2025). In that case, the court issued a preliminary injunction in favor of Rutgers University football player Jett Elad, ruling that his year at junior college should not count against his four seasons of competition or his five-year period of eligibility. Plaintiffs state that decision in *Elad* prompted them to seek an additional season of eligibility.

**A.     Plaintiffs**

1. Christopher Bellamy[5]

Plaintiff Christopher Bellamy attended junior colleges that are members of the NJCAA from 2019-2022 during which he played two seasons of football. In 2020-21 he did not play football due to COVID.[6] In 2022, he transferred to New Mexico State, a NCAA Division I

---

[4]     In addition, Plaintiff Christopher Bellamy did not fall under the waiver because his final season of competition was in 2023-24, and Plaintiff Targhee Lambson did not fall under the waiver because he had signed with an agent prior to the issuance of the waiver and was, therefore, not otherwise eligible.

[5]     *See* Bellamy Decl., Doc. No. 1-9.

[6]     The NCAA issued self-applied waiver relief for the 2020 season due to COVID. Pursuant to the waiver, 2020 does not count toward seasons of intercollegiate competition or period of eligibility. (*See* Division I COVID-19 Self-Applied Waiver Relief for Season of Competition and Extension of Eligibility, Doc. No. 1-8).

6

institution, where he played football during the 2022-23 and 2023-24 seasons. Bellamy's eligibility ended in 2024 and he did not play football during the 2024-25 season.

The Pavia waiver did not apply to him because 2024-25 was not his final season of eligibility and it did not include relief from the five-year period of eligibility. After the District Court for the District of New Jersey issued a preliminary injunction allowing an additional season of eligibility to Jett Elad, *Elad*, 2025 WL 1202014 at * 10-11, Bellamy thought he might regain eligibility. He began the process of enrolling in Vanderbilt University and Vanderbilt submitted a waiver request on his behalf on May 16, 2025. He began working out with the Vanderbilt football team, but when the NCAA denied his waiver request on June 23, 2025, Vanderbilt said Bellamy could not participate in team activities unless a Court order allows him to do so. Vanderbilt has a roster spot for Bellamy. Plaintiffs did not state how long Vanderbilt would hold the roster spot.

2. Demarcus Griffin[7]

Plaintiff Demarcus Griffin attended and played football at a junior college during the 2019-20 and 2020-21 seasons. In 2021-22, he attended the University of Houston, a NCAA Division I institution, but redshirted and did not compete. He played football at the University of Houston during the 2022-23 season, and then transferred to Louisiana Tech, a NCAA Division I institution, where he played football during the 2023-24 and 2024-25 seasons. After the *Elad* decision, Louisiana Tech applied for a waiver for Griffin, which the NCAA denied on June 13, 2025. Louisiana Tech is holding a roster spot for Griffin.

---

[7] *See* Griffin Decl., Doc. No. 1-12.

7

3. TJ Smith[8]

Plaintiff TJ Smith played football at a junior college in 2019-20 and 2020-21. In 2021, he transferred to Upper Iowa, a NCAA Division II institution. In 2022 he transferred to Florida Atlantic University, a NCAA Division I institution. He redshirted (did not compete) in the 2022-23 season. The next year, he transferred to North Alabama, a NCAA Division I institution, and played football there in 2023-24 and 2024-25. Smith filed a Declaration in the *Pavia* case, but was not a plaintiff. He states that he hopes to play college football during the upcoming season, but does not have a firm offer from any college.

4. Targhee Lambson[9]

Plaintiff Targhee Lambson played football for a junior college in 2021-22 and 2022-23. After graduating with an associates degree, Lambson transferred to Southern Utah University, a NCAA Division I institution, where he played football in 2023-24 and 2024-25. Before this Court issued the Pavia injunction and the NCAA issued the blanket waiver, Lambson signed with an agent to prepare for a chance to play in the NFL. Lambson's agent (correctly) told him that the Pavia waiver did not apply to him because he had signed with an agent prior to the issuance of the waiver and was, therefore, "not otherwise eligible."[10] Lambson received $250 per week for training expenses (a total of $2,750) but never signed a contract with a professional team. Lambson has requested a waiver / reinstatement from the NCAA, but they have not yet ruled on his request. He states that Vanderbilt University has indicated they are interested in him if he is eligible.

---

[8] *See* Smith Decl., Doc. No. 1-16.

[9] *See* Lambson Decl., Doc. No. 1-17.

[10] Bylaw 12.1.2(g) states that "[a]n individual loses amateur status and thus shall not be eligible for intercollegiate competition in a particular sport if the individual: … (g) enters into an agreement with an agent."

## II. STANDARD OF REVIEW

"To secure a preliminary injunction, a plaintiff must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *EOG Resources, Inc. v. Lucky Land Mgmt., LLC*, 134 F.4th 868, 874 (6th Cir. 2025) (citing *Winter v Nat. Rs. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). The purpose of a preliminary injunction is to "preserve the relative positions of the parties until a trial on the merits can be held." *Id*. at 883. (citing *Starbucks Corp. v. McKinney*, 602 U.S. 339, 345-46 (2024)). The relief is *preliminary* – "it does not conclusively resolve anything – that's what final judgment is for." *Id*. "The preliminary injunction simply puts the case in a holding pattern and 'balance[s] the equities as the litigation moves forward.'" *Id*. (citing *Trump v. Int'l Refugee Assistance Project*, 582 U.S. 571, 580 (2017)).

"Because a preliminary injunction is an 'extraordinary' equitable remedy that is 'never awarded as of right,' the plaintiff must make a 'clear showing' that these factors favor him." *Id*. (quoting *Starbucks*, 602 U.S. at 345-46). The movant "faces a burden of proof 'more stringent than the proof required to survive a summary judgment motion.'" *Enchant Christmas Light Maze & Market Ltd. v. Glowco, LLC*, 958 F.3d 532, 539 (6th Cir. 2020).

A failure to establish a likelihood of success on the merits "'is usually fatal' to a plaintiff's quest for a preliminary injunction." *Enchant*, 958 F.3d at 539 (quoting *Gonzalez v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000)). But even if the plaintiff shows a likelihood of success on the merits, "a preliminary injunction does not follow as a matter of course." *EOG Resources*, 134 F.4th at 883 (citing *Benisek v. Lamone*, 585 U.S. 155, 158 (2018)). "The plaintiff must also show that some irreparable harm will take place without the court's immediate intervention." *Id*. ("While the *extent* of an injury may be balanced against other factors, the

*existence* of an irreparable injury is mandatory."). In considering the balance of equities, the Court "balance[s] the competing claims of injury[,] … consider[ing] the effect on each party of the granting or withholding of the requested relief." *EOG Resources*, 134 F.4th at 886 (citing *Winter*, 555 U.S. at 24).

"As a general rule, the law requires that 'losses should remain where they fall until an adequate legal or equitable justification for shifting them has been demonstrated.'" *Id.* at 884 (citing *Higuchi Int' Corp. v. Autoliv ASP, Inc.*, 103 F.4th 400, 404 (6th Cir. 2024)).

### III. ANALYSIS

Plaintiffs seek a preliminary injunction to enjoin the NCAA from enforcing Bylaws 12.8 (allowing four seasons of intercollegiate competition within five calendar years) and 12.02.6 (defining intercollegiate competition)[11] based on their attending and/or playing football at community or junior college. Plaintiffs contend such enforcement is an undue restraint on the labor market for college football players that violates the Sherman Act.

Plaintiffs rely heavily on the Court's decision in *Pavia*, arguing that many of the issues decided in that case are equally applicable to these Plaintiffs nine months later. In fact, Plaintiffs rely on the expert declaration from Joel Maxcy that was submitted in the *Pavia* case.[12] (Doc. No. 1-19). Although many of the issues presented are the same, this case is different from *Pavia* in several ways. First, although Pavia challenged the same Bylaws as those at issue in this case, because Pavia had one year of eligibility remaining on the five-year clock, effectively the only Bylaws at issue were the Bylaws stating that athletic competition while enrolled in junior college

---

[11] The Motion also lists Bylaw 14.3.3, which limits the seasons of competition of "nonqualifiers," but the parties appear to agree that this Bylaw does not apply to the Plaintiffs in this case.

[12] Plaintiffs also submitted a report by Joel Maxcy and Maxcy's hearing testimony from the *Elad* case. (Doc. Nos. 1-20, 1-21).

counted toward the four-years of intercollegiate competition – Bylaws 12.8 and 12.02.6. Here, Plaintiffs are eligible only if junior colleges are excluded from the definitions of intercollegiate competition (Bylaw 12.02.6) *and* collegiate institution (Bylaw 14.02.4) so that neither the five-year period of eligibility nor the four years of intercollegiate competition would commence until enrollment at a NCAA institution.

In addition, Dr. Maxcy has expanded upon the opinions offered in *Pavia* and has been subject to cross examination at a hearings in *Elad v. NCAA* and *Brzovic v. NCAA*.[13] In those cases, he conceded that his opinions are based on his "intuition" and "experience" rather than on any economic modeling or analysis. Defendants argue that upon consideration of the limitations of Dr. Maxcy's opinions, the Court would reach a different conclusion with regard to Plaintiff's likelihood of success on the merits.

At this juncture, the Court need not reach those issues because the specific circumstances of the Plaintiffs in this case are different than those of Pavia. Even assuming Plaintiffs show a likelihood of success on the merits, consideration of the remaining factors – irreparable harm, balance of the equities, and the public interest – leads the Court to conclude that a preliminary injunction is not warranted.

## A. Irreparable Harm

In *Pavia*, the Court had no trouble concluding, as many other courts have, that the denial of the ability to play sports is irreparable harm. *Pavia*, 760 F. Supp. 3d 527, 544 (M.D. Tenn. 2024) (citing *Ohio*, 706 F. Supp. 3d at 597 ("Courts have repeatedly found that '[c]ollege students suffer irreparable harm when they are denied the opportunity to play sports.'") (collecting cases)). In

---

[13] *See* Preliminary Injunction Hearing Transcript at 94-96, *Elad v. NCAA*, Case No.25-1981 (D.N.J. Apr. 16, 2025) (filed in this case at Doc. No. 1-21); Preliminary Injunction Hearing Transcript at 73, 83-84, *Brzovic v. NCAA*, Case No. 2:25-2885 (D.S.C. May 6, 2025) (filed in this case at Doc. No. 25-5).

*Pavia*, the Court also considered the harm resulting from the potential lost opportunity for "exposure and building his 'personal brand.'" *Id.* The Court found Pavia did not unreasonably delay in bringing suit given the "recent changes both to Pavia's personal circumstances and the legal landscape" and that the NCAA had been considering providing five seasons of eligibility to athletes over the course of five years, which in Pavia's case would have allowed him to compete an additional year. *Id*. In addition, the Vanderbilt football coach stated that he was holding a spot for Pavia, but needed to "lock in" the quarterbacks for 2025 and that it would be "very difficult" to bring Pavia back after the quarterback decisions had been made. *Id*. at 535. At the time of the decision, Pavia was already enrolled in Vanderbilt as a graduate student and expected to continue in his course of study and complete his master's degree.[14]

The Plaintiffs in this case come to court under different circumstances. As it did in *Pavia*, the NCAA argues that Plaintiffs' delay in seeking injunctive relief weighs against a finding of irreparable harm. (Def. Resp., Doc. No. 25 at 46 (citing *Allied Erecting & Dismantling Co. v. Genesis Equip. & Mfg.*, 511 F. App'x 398, 404 (6th Cir. 2013) (finding that 'an unreasonable delay in filing for injunctive relief' weighs 'against a finding of irreparable harm.'"))). The NCAA argues that Plaintiffs have known since at least the 2022-23 academic year that they had five years to complete four seasons of intercollegiate competition, which included their time a community or junior colleges. The NCAA points to Bylaw 12.7.2.1, which requires student-athletes to submit a signed statement that provides information related to eligibility and to acknowledge that they are "responsible for knowing and understanding the application of all NCAA Division I regulations related to [their] eligibility."[15] The NCAA argues that, at a minimum, Plaintiffs were aware of

---

14  *See* Second Pavia Declaration, *Pavia v. NCAA*, Case No. 3:24-cv-01336, Doc. No. 33-6.

15  *See* NCAA Student-Athlete Statement – Division I,

12

their potential claims in December 2024 when this Court granted a preliminary injunction in *Pavia* and the NCAA provided a blanket waiver covering analogous circumstances – a waiver that did not extend to Plaintiffs. The NCAA also argues that the potential for irreparable injury to TJ Smith and Targee Lambson is too speculative to support the issuance of an injunction as neither of them has a firm offer to join a team for the coming season.

Plaintiffs tie the timing of their request for relief to the grant of preliminary injunction in *Elad v. NCAA*, No. 25-1981, 2025 WL 1202014 (D.N.J. Apr. 25, 2025). But they also observe (correctly) that the reasoning of this Court's decision in *Pavia* would likely apply to the five-year eligibility rule. Yet, they provide no basis for not requesting relief earlier. The timing is particularly noteworthy for Christopher Bellamy, who has not played college football since the 2023-24 season, and for TJ Smith, who submitted a declaration in the *Pavia* case, but did not seek relief on his own behalf at that time.

Unlike in *Pavia*, where immediate preliminary relief was necessary to preserve Plaintiff's opportunity to negotiate NIL compensation for the coming season, to retain his roster spot as quarterback, and to capitalize on an "unprecedented season," Plaintiffs in this case have not made such a showing. Although the denial of the ability to play sports can constitute irreparable harm, these Plaintiffs show that the denial of preliminary relief does not necessarily foreclose the possibility that they could regain the opportunity to play if their claim is successful on the merits. Indeed, Vanderbilt University has offered Christopher Bellamy a roster spot despite his absence from college athletics for over a year. It is true that denial of preliminary relief means Plaintiffs

---

*https://ncaaorg.s3.amazonaws.com/compliance/d1/2025-26/2025-26D1Comp_Form25-1a-StudentAthleteStatement.pdf* (last visited Aug. 5, 2025).

will not be eligible to play college football in the coming season. However, unlike Pavia, whose irreparable harm was tied directly to the coming season, Plaintiffs have not made such a showing.

**B.     Balance of Equities & Public Interest**

Plaintiffs argue that the NCAA faces no substantial harm from preliminary injunctive relief and that the equities favor "rewarding Plaintiffs for their hard work" and "allowing them the same four years of Division I football offered to college athletes who did not start out at junior college." (Doc. No. 9 at 22-23). Plaintiffs assert that a preliminary injunction will serve the public interest by "promoting free and fair competition in the labor markets guaranteed by the antitrust laws."

The NCAA argues that no matter how narrowly the Court structures an injunction, preliminary relief concerning eligibility rules has sweeping implications – with each successfully obtained injunction comes a new challenge to the NCAA's eligibility rules and granting relief risks harm to student-athletes who have already committed to a member institution.

Many of the issues discussed above with regard to irreparable harm are equally applicable to the balance of the equities under which the Court balances the competing claims of injury. The severity of Plaintiffs' asserted injury, that they will be ineligible to play Division I football during the coming season, is tempered by the delay in seeking relief. As noted above, Plaintiffs could have challenged the eligibility rules years ago, but waited until many teams had already begun to practice before seeking redress in the courts. To be sure, their perception of the value of a season of play may have evolved since they began their Division I careers, but the failure to seek redress until now suggests a lack of urgency for relief. *See* 11A Charles A. Wright, Arthur R. Miller, et al., *Federal Practice and Procedure* § 2948.1 (3d ed. 2018) ("A long delay by plaintiff after learning of the threatened harm also may be taken as an indication that the harm would not be serious enough to justify a preliminary injunction.").

Timing aside, Targhee Lambson is currently ineligible to play NCAA Division I football due to the Bylaw prohibiting the use of an agent, which is not one of the Bylaws Plaintiffs seek to preliminary enjoin. Accordingly, the equities could not favor a preliminary injunction for Mr. Lambson.

The Court has recognized that "the public interest is served by promoting free and fair competition in the labor markets." *See Pavia*, 760 F. Supp. 3d at 544. However, as the requested relief affects only these Plaintiffs, this factor does not weigh heavily in the Court's consideration.

## IV. CONCLUSION

For the reasons stated, Plaintiffs have not shown that immediate relief is warranted. Accordingly, the motion for Temporary Restraining Order and Preliminary Injunction (Doc. No. 8) is **DENIED**. Plaintiffs' Second Motion for Temporary Restraining Order (Doc. No. 38) is **DENIED** as moot.

_____
WILLIAM L. CAMPBELL, JR.
CHIEF UNITED STATES DISTRICT JUDGE